Good morning everyone. It's a beautiful day. Look at this. It's a beautiful day. Before we begin with our oral arguments this morning, Judge Fernandes and I would like to thank and acknowledge District Judge Tim Burgess from the District of Alaska who's visiting with us today and helping us out. So we're very appreciative. Very nice to be here. Thank you. Okay. So our first case for argument this morning is Contreras-Marin v. Barr. May it please the Court, this case presents issues of Could you keep your voice up? Yes. This case presents issues of whether Mr. Contreras-Marin is statutorily eligible for cancellation of removal for non-permanent residents. There were two legal defects in the Board's consideration of Mr. Contreras-Marin's case. The first was that the Board should have remanded the case to the Immigration Court because of ineffective assistance of Mr. Contreras-Marin's counsel before the Immigration Court. The second issue is that in reviewing the Immigration Court's decision, the Board applied the incorrect law regarding the standard for exceptional and extremely unusual hardship. The Board said that the law could only be to an individual qualifying relative when the Board's precedent and indeed the precedent of this Court have said that the hardship is to the qualifying relatives as a whole. I'd like to start with the issue of the motion to remand. While his case was pending before the Board, he filed a motion to remand on the basis of constitutionally ineffective assistance of counsel, and that motion contained exhibits with a variety of evidence that was not presented by his counsel before the Immigration Court. Looking at those exhibits that were filed reveals the range of evidence that was essential to Mr. Contreras-Marin's case and was not presented before the Immigration Court. The basic and most fundamental error that the counsel made before the Immigration Court was the failure to present statements from the qualifying relatives in the case. Mr. Contreras-Marin's counsel does not dispute that he did not attempt to have Mr. Contreras-Marin's qualifying relatives either testify by the telephone or provide written statements. Trial counsel suggested that the written statements do not have evidentiary weight, which is inconsistent of the practice of the Immigration Court. It's also worth noting that he appears not to believe this himself, as he submitted eight written statements of third parties as evidence, just no statements from the qualifying relatives in the case. What did these additional statements add to the record? I'm glad you asked that. So what they add most fundamentally is evidence of the emotional harm that would be suffered by Mr. Contreras-Marin's qualifying relatives if he were moved to Mexico. And we know that that evidence was missing from the record in the Immigration Court because the Immigration Court specifically said that Mr. Contreras-Marin had difficulty articulating the degree of harm that would be suffered by his children and his parents. Further, the Immigration Court's decision does not examine the emotional distress that would be caused by Mr. Contreras-Marin's absence from the U.S. This is a critical factor in determining whether Mr. Contreras-Marin had met the standard of exceptional. What's the test? Yes. What's the test? It's exceptional and extremely unusual hardship. So what's exceptional and extremely unusual hardship in the context of this case if he were to be moved to Mexico? Right. Well, in this case, one of the factors that is essential is the number of qualifying relatives that depend on Mr. Contreras-Marin. He had three children who were U.S. citizens, including one who was only a month old at the time of the individual hearing. And he has parents who are aging, dealing with medical problems, and would also be emotionally distressed because of his removal to Mexico. And so when you see the Immigration Court analyzing the issue, they look solely at the material consequences of him moving to Mexico, which would be the lack of financial support and factors like that. But the emotional aspect is really important, particularly with the medical condition of his parents. So trial counsel did present records to the Immigration Court that Mr. Contreras-Marin's parents were ill. However, he wasn't able to tie it into the case of why their condition would become worsened if Mr. Contreras-Marin was removed to Mexico. The declaration of Mr. Contreras-Marin's father, which was submitted as part of the motion to remand, shows that he was concerned about his medical conditions because of the emotional impact of having his son returned to Mexico. Do you want to address the other issue? Yes, Your Honor. So the BIA erred in saying that the hardship to each qualifying relative cannot be combined to meet the hardship standard in cancellation of removal cases. Although the statute requires exceptional and extreme hardship to an individual qualifying relative, it has been interpreted by both the Board and the Ninth Circuit in cases where there are more than one qualifying relative as applying to the group of qualifying relatives as a whole. And I would specifically cite Racines for the Board and Watkins for the Ninth Circuit. In Racines, it was a single mother of six children, four of whom were U.S. citizens. And the case repeatedly referred to hardship to the qualifying relatives as a whole, not to each individual qualifying relative in isolation. Now, this makes a lot of sense if you think about a family where the hardship to each qualifying relative is going to be increased by the suffering of each other qualifying relative. And this is a principle that's been consistently recognized by both the Board and the Ninth Circuit. The truth about hardship in these cases is that the hardship builds between each qualifying relative. Now, the two issues in this case are to an extent intertwined. Let me ask you this. Did the Board cite to Racines? Yes, Your Honor. The Board did cite Racines. But then it specifically said that it could only look to the qualifying relative, to the hardship to one specific qualifying relative and could not combine them cumulatively. And that was the legal error that was made by the Board. So is the Board misreading its own precedent? Yes, I would say that it is misapplying its precedent. That's correct. It cited in Ray Racines for the matter that having a large number of qualifying relatives could meet the standard of extreme and exceptionally unusual hardship. And then later on it says that you can only look to the hardship of one individual qualifying relative. So the decision is almost internally inconsistent, although you could also say that they were misreading Racines. And so the last thing I would say is that the two issues are intertwined to an extent and that the Board of Immigration Appeals viewed the hardship evidence as only applying to each qualifying relative. And that likely influenced this decision that the more evidence of cumulative hardship would not have influenced the Immigration Court's decision when they were examining the case. If the BIA had applied the proper standard of cumulative hardship, it would have acknowledged that the evidence presented in the motion to amend would very likely have influenced the Immigration Court in rendering its decision. Thank you. I'd like to reserve the rest of the time for rebuttal. Yes, that's fine. May it please this Court, my name is Andrew Oliveira. On behalf of the Respondent, the Attorney General, William Barr. This Court lacks jurisdiction to review the determination that Contreras failed to establish an exceptional and extremely unusual hardship to his qualifying relatives. But don't we have authority if the wrong standard was applied? Correct, but the question of law has to be a colorable claim, and here there is no colorable question of law raised. What is the Board doing here with respect to the cumulative analysis? The Board and the Immigration both applied the correct precedent. What's the correct standard? It is a cumulative analysis of all the various factors. So, for example, that would be the financial, the emotional, all of the hardships combined together for each qualifying relative. But can you combine the relatives together? No, that is not what Racines held. And it's important to understand what Racines was. It was a single mother who had four U.S. citizen children, all of whom were, I believe, 12 and under. She had two older non-U.S. citizens. The Board, in that case, did not say that each child only had a 25 percent hardship. Because they were all similarly situated, the hardship was an exceptionally and extremely unusual to each of them. Whereas here, Contreras wants to take three disparate groups of relatives and add them up to equal one hardship. So is it a grouping argument that you group all children, you group all parents? I'm not sure I understand what you're saying. No, it's that each relative is analyzed cumulatively. So it's the collective effect on each relative? For the hardships, yes. So it would be for the emotional and economic hardships to each individual relative. But you can't combine them? No, you can't add them up and say, well, his son in Oregon has a 10 percent chance and his parents in Chico each have a 10 percent chance and then his children in Nevada have each a 30 percent. So if we add that up, do we get to the exceptional, extremely unusual hardship? Because that's not what the statute says and that's not what this Court nor the Board have ever said. The Board and this Court have consistently said that you just have to engage in a cumulative analysis of all the factors. You cannot look at one factor in isolation. And the Board, in dismissing the argument, specifically cited the statutory language, which was the qualifying relative. It didn't say to the qualifying relatives as a collective. So is your argument that, so I guess following up on Judge Burgess' question, that, well, I'm not sure I understand your position exactly. In Racinus, you said that there were just a group of children that were involved. Yes, and each of the children. And what you're saying is Racinus should be read as looking at each individual child. Correct, because they had the exact same hardship. There was no differentiating the four children. It doesn't quite seem to be what the Board did there. But the Board did not isolate the children as Contreras suggests that they did. The Board there, while they were a group of children, did not each child establish the exceptional and extremely unusual hardship. There wasn't a situation where individually none of them had a hardship. The hardship to all of the children was the same. And this idea that you can add them up is not supported, again, in the statute or any precedent of this Court or the Board. Finally, turning to the ineffective assistance of counsel claim, while this Court standard may have affected, the applicant still must submit the evidence that was not submitted. And here there's just a suggestion that maybe the trial counsel could have done more, but there is no concrete evidence beyond what was already presented to the immigration judge. So in conclusion, the Board correctly determined that there was no prejudice from the trial counsel's conduct. If there are no further questions, we ask that this… I'm still looking at Racinus, though, and the critical language in Racinus, which I'm not sure I agree with the way you're reading it, but I guess that we'll have to think about. Well, again, it's just the statutory language does not permit the interpretation that Contreras is suggesting that it does. All right. I understand your argument. Okay. If there are no further questions… I don't think so. …we ask that this Court affirm the decision of the Board. Okay. Thank you. Thank you. Just briefly, the Court in Racinus and also this Court in Watkins repeatedly refers to the qualifying relatives in the plural as a group. And while it's true the statute is written in the singular, the statute sets the floor for what an individual has to have to be granted cancellation of removal. It can be granted with just one qualifying relative if the immigrant only has one. However, if they're a group of qualifying relatives,  the cumulative for the group of qualifying relatives. Well, one way you could look at this is that counsel for the government said that in Racinus there were four children, and then you look at the claim basis for the hardship and you can just apply it to all the children. Is that a cumulative analysis or is that just… I believe that is a cumulative analysis to say what is the hardship to the children as a group. I believe that is what Racinus did. And in this case, the immigration court, I'm sorry, it's actually the Board, should have said, you know, did the qualifying relatives as a group meet the standard of exceptional and extremely unusual hardship? Well, what if, like here, what if the members of the group were, you have an infant on one end and you have adult children at the other and you have parents, elderly parents at another? I understand that and I do still think that the cumulative and aggregate factors apply. And the reason for that is that, you know, even though they're in different situations, different circumstances, they still have emotional ties to one another that would be harmed if Mr. Contreras-Marin were returned to Mexico. And so that harm would be suffered as a group because of their emotional ties to each other. And this, again, goes back to the question of the evidence that was not presented at the immigration court, which is the emotional ties between the different qualifying relatives and how they would suffer as a group. Thank you. Thank you, counsel. We appreciate your arguments this morning.
judges: Fernandez, Paez, Burgess